**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LOUIS J. AGUIRRE,**<br><br>Plaintiff**,**<br><br>vs.<br><br>**CLARK E. DUCART, ET AL.,**<br><br>Defendants**.** | CASE NO. 17-cv-06898-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 24 |

Plaintiff Louis J. Aguirre brings this action against defendants Clark E. Ducart, D. Wilcox, D. Wells, J. Frisk, S. Burris, and Does 1-70 for deprivations of his civil rights under the Sixth, Eighth, and Fourteenth Amendments, as well as the Ex Poste Facto Clause of the Constitution, related to plaintiff's allegedly erroneous designation as a gang affiliate. (Dkt. No. 22 ("FAC").) Specifically, plaintiff alleges that defendants improperly validated plaintiff as an affiliate or associate of a "Mexican Mafia" prison gang, failed to review plaintiff's gang status in a timely fashion, and inappropriately revalidated that gang status, resulting in plaintiff's improper detention in the Special Housing Unit ("SHU") and over-detention in prison in violation of plaintiff's rights under the Sixth, Eighth, and Fourteenth Amendments. (*Id.* ¶¶ 18-194.) Moreover, plaintiff alleges that defendants enforced California Penal Code Section 2933.6, which, effective January 25, 2010, eliminated good behavior credit for all inmates validated as affiliated with or associates of a gang, in violation of the Ex Post Facto Clause. (*Id.* ¶¶ 219-221.)

Now before the Court is defendants'[1] motion to dismiss for failure to state a claim under Rule 12(b)(6).[2] (Dkt. No. 24 ("MTD").) Having carefully considered the pleadings, the papers

---

[1] Defendant Ducart filed the motion to dismiss on May 15, 2018. (MTD.) Defendants Wilcox, Frisk, and Burris joined Ducart's motion as well as his reply to plaintiff's opposition to the motion to dismiss on June 22, 2018. (Dkt. No. 44.)

[2] In support of their motion to dismiss, defendants request judicial notice of (1) five petitions for habeas corpus filed by plaintiff between November 2011 and August 2016; (2) five

submitted, and for the reasons set forth more fully below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** defendants' motion to dismiss with **LEAVE TO AMEND**. Thus, plaintiff may file a second amended complaint ("SAC").

**I.     BACKGROUND**

   **A. Factual Background**

Plaintiff alleges as follows:

On July 31, 2009, plaintiff was sentenced to nine years in prison for violations of California Health and Safety Code Section 11378 and 11370.1(g) as well as Penal Code Section 12021(a)(1). (FAC ¶¶ 20-21.) When plaintiff was sentenced, he understood, as provided in California Penal Code 2933.6(a), that he would have the opportunity to receive a credit reduction for good behavior of one day for every five days served. (*Id.* ¶ 34.) Moreover, plaintiff's determinate sentence of nine years was adjusted by pre-sentence time served credit to September 16, 2016. (*Id.* ¶ 35.) Accordingly, taking into account credit for pre-sentence time served and expected good behavior, plaintiff's minimum adjusted sentence would have expired on April 14, 2015. (*Id.* ¶ 36.)

On August 12, 2009, plaintiff was transferred to Wasco State Prison ("Wasco"). (FAC ¶ 22.) On October 2, 2009, Wasco staff concluded their investigation into plaintiff's potential gang affiliation and informed plaintiff of his validation as an associate of the Mexican Mafia ("EME") prison gang. (*Id.* ¶¶ 64-69.) The validation was based on four source items: (1) a December 22, 2008 letter written by inmate Rivas, an EME associate, and addressed to plaintiff; (2) a December 22, 2018 Jail Incident report regarding another letter written by inmate Hill, an

---

orders by the California Supreme Court denying plaintiff's petitions for habeas corpus; (3) two excerpts from the California Code of Regulations; (4) a complaint and an amended complaint filed by plaintiff in the matter of *Aguirre v. Gipson, et al.*, Case No.: 1:13-cv-604-DLB-PC; and (5) two findings and recommendations dismissing plaintiff's complaint nd amended complaint, as well as an order adopting the findings and recommendations in *Aguirre v. Gipson, et al*. (Dkt. No. 24-1 ("RJN").) As these documents are matters of public record filed with the California Supreme Court and the U.S. District Court for the Eastern District of California, the Court **GRANTS** defendants' request for judicial notice. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original).

2

EME associate, and addressed to plaintiff; (3) a February 27, 2009 Jail Incident Report regarding a February 20, 2009 letter written by plaintiff to inmate Rivas, which a Sheriff's Deputy interpreted to include "coded information about the activities of various inmates, alleged to be gang associates[;]" and (4) an October 1, 2009 review of a January 16, 2009 Jail Incident Report regarding a letter written by plaintiff, who allegedly signed using a symbol associated with the EME prison gang.[3] (*Id.* ¶¶ 23-32.) Plaintiff alleges the deputy who conducted the October 1, 2009 review was "not qualified as an expert in gang investigation, was not trained in . . . validation protocols, and was unaccountable for errors or deliberate misrepresentations of material allegedly found in plaintiff's writings."

Plaintiff was validated as an EME associate on November 18, 2009. (*Id.* ¶ 76.) As a result of his validation, plaintiff was transferred to Corcoran State Prison ("Corcoran") SHU on July 22, 2010. (*Id.* ¶ 90.) California Penal Code Section 2933.6(a) restricts the ability of certain prisoners in SHU confinement to earn sentence credit. The 2009 version of Section 2933.6(a), in effect when plaintiff was sentenced, reads "Notwithstanding any other law, a person who is placed in a [SHU] . . . for misconduct described in subdivision (b) is ineligible to earn work credits or good behavior credits during the time he or she is in the [SHU] . . . for that misconduct." (*Id.* ¶¶ 91-92.)

Section 2933.6(a) was revised, effective January 25, 2010, to read "Notwithstanding any other law, a person who is placed in a [SHU] . . . for misconduct described in subdivision (b) *or upon validation as a prison gang member or associate* is ineligible to earn work credits or good behavior credits during the time he or she is in the [SHU] . . . for that misconduct." (*Id.* ¶¶ 93-94.) On August 26, 2010, plaintiff was notified that as an inmate housed in SHU based upon gang validation, pursuant to the revision of Section 2933.6(a), he was no longer eligible to earn credit against his sentence for good behavior and that his minimum release date had changed from April 15, 2015 to August 3, 2016. (*Id.* ¶ 95.)

On September 6, 2012, while he was housed in Corcoran SHU, plaintiff received his meal

---

[3] The symbol in question is the "mactlactomei" symbol, consisting of two lines and three dots, which symbolizes the number thirteen in the Mayan language, the thirteenth letter of the alphabet being "M." (*See* Dkt. No. 22-6.)

with all other inmates housed in the same section. (*Id.* ¶¶ 96-97.) After finishing his meal, plaintiff prepared to return his tray. (*Id.* ¶ 98.) Another inmate refused to return his tray and announced that he "represented the Southern Hispanic inmates, and that while all would return their trays, he was calling into question the placement of a 'PC' inmate in cell 55." (*Id.* ¶ 99.) An officer subsequently incorrectly alleged that everyone housed in the same section participated in the inmate's demonstration and did so as a showing of gang loyalty. (*Id.* ¶ 101.) As a result every inmate who was present during the demonstration, including plaintiff, received a Rules Violation Report ("RVR"). (*Id.*) Plaintiff did not refuse to return his tray and returned it when the correctional officer came to his cell to retrieve it. (*Id.* ¶ 102.) He did not speak to the inmate who engaged in the demonstration and was not aware that a protest would occur. (*Id.* ¶ 103.) Plaintiff challenged his RVR at a hearing, during which two correctional officers stated that they did not see plaintiff withholding his tray, but his appeals were ignored. (*Id.* ¶¶ 105-106.)

On February 2, 2012 plaintiff received a SHU Annual Review before the Corcoran Institution Classification Committee ("ICC") and was endorsed for transfer to Pelican Bay State Prison ("Pelican Bay") and placement in the Pelican Bay SHU. (*Id.* ¶ 108.) On March 1, 2012, plaintiff appealed the Annual Review based on his lack of misconduct during his time at Corcoran and the fact that "the information received from other agencies denied him due process as he was not given an opportunity to contest the information when it was created."[4] (*Id.* ¶ 109.) Plaintiff's first and second level reviews of his appeal were denied on August 9, 2012 and September 21, 2012, respectively, based on plaintiff's November 18, 2009 gang-affiliate validation and underlying claims. (*Id.* ¶¶ 110-111, 114.) His third level review was cancelled on December 14, 2012. (*Id.* ¶ 113.)

On July 1, 2014, plaintiff was transferred to Pelican Bay SHU. (*Id.* ¶ 125.) On January 31, 2015, plaintiff submitted an appeal regarding the denial of credit for good behavior pursuant to the revision of Section 2933.6(a). (*Id.* ¶ 127.) On February 6, 2015, plaintiff's appeal was rejected at the first level review, but was later accepted at the second level on February 10, 2015.

---

[4] The Court understands the FAC to refer to the four documents that formed the basis of his original gang validation. If this is inaccurate, any amendment to the FAC should clarify.

4

(*Id.* ¶¶ 128-129.) On March 16, 2015, plaintiff's appeal was denied at the second level of review based on the November 18, 2009 gang validation. (*Id.* ¶ 130.)

In January 2015, plaintiff informed defendants that his six-year active/inactive gang status review date should be January 16, 2015, six years from the date of the last alleged gang activity, not October 2, 2015. (*Id.* ¶ 133.) On January 21, 2015, defendants acknowledge the error and that the correct six-year review date should be January 16, 2015. (*Id.* ¶ 134.) On February 4, 2015, plaintiff appeared before the Pelican Bay SHU ICC for his annual review, which resulted in retention of plaintiff's SHU status and notation of the error regarding plaintiff's six-year review. (*Id.* ¶ 135.) Subsequently, defendants re-validated plaintiff's status six times as a gang-affiliate, namely five times in 2015 (April 13, May 11, July 8, August 3, and September 30) and on January 26, 2016. (*Id.* ¶¶ 140-152.) In March 2016, Pelican Bay SHU ICC released plaintiff from administrative SHU based because plaintiff had not been found guilty of a SHU-eligible rule violation with a proven gang-nexus within the prior twenty-four months. (*Id.* ¶ 188.)

**B. Procedural Background**

On August 27, 2010, plaintiff sought habeas relief from the Kings County Superior Court alleging that Wasco prison staff violated his due process rights when they validated him as an EME associate. (*See* RJN, Ex. A.) The court denied plaintiff's habeas petition, and plaintiff's appeals to the California Fifth Appellate District and to the California Supreme Court were both denied. (*Id.*, Exs. A-B.)

Plaintiff brought two habeas petitions in Venture County and Del Norte County contesting the amendment of California Penal Code Section 2933.6(a) as a violation of the Ex Post Facto Clause. (*Id.*, Exs. E, I.) Both petitions were denied, as were plaintiff's appeals to the First and Fifth Appellate Districts and the California Supreme Court. (*Id.*)

Plaintiff brought a civil action against Corcoran and Ventura Country prison and jail staff under Section 1983 alleging that prison and jail staff violated his due process rights when they validated him as an EME associate. (*Id.* at Exs. M-Q.) The court screened plaintiff's complaint and dismissed it without leave to amend for failure to state a claim. (*Id.*)

///

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). If a court dismisses a complaint, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III. DISCUSSION

### A. Improper Gang Validation and Resulting Claims

Plaintiff alleges that he was erroneously validated as a gang affiliate, resulting in SHU confinement. (FAC ¶¶ 206, 215). He further states that defendants failed to conduct, in a timely or meaningfully fashion, plaintiff's inactive/active gang status review, erroneously extending his SHU term. (*Id.*) Plaintiff alleges that due to his extended SHU term, and as a result of an amendment to California Penal Code Section 2933.6(a), he was denied his right to earn good-time credits for an earlier prison release, and as a result, was over-detained by approximately 16 months. (*Id.* ¶¶ 219-223, 194.) Accordingly, plaintiff alleges that as a result of defendants' actions he suffered: (i) unconstitutional conditions of confinement in SHU, (ii) over-detention, both in SHU and in prison, generally; and (iii) deprivation of due process. (*Id.* ¶¶ 202-217.)

i. Conditions of Confinement

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishment," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The Amendment also imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer*, 511 U.S. at 832; *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991)).

Here, plaintiff has alleged that "[a]t various periods during [his] confinement in SHU, he had to endure . . . 23 or more hours confined to his cell; solitary confinement where the only contact with others was by yelling through perforations in the walls without seeing other inmates; and lack of full clothing." (FAC ¶ 215.) He has also alleged that he "repeatedly informed the defendants . . . of the unlawful and incorrect gang validation and . . . designation." (*Id.*) Moreover, defendants appear to concede that plaintiff has stated a claim that the conditions of his confinement in SHU violated the Eighth Amendment. (*See* Dkt. No. 43 ("Reply") at 5.) Accordingly, the defendants' motion to dismiss is **DENIED IN PART** as to plaintiff's Eighth Amendment claims related to the conditions of his confinement in SHU.

ii. Over-detention

In order to recover damages for an allegedly unconstitutional imprisonment, a plaintiff bringing a Section 1983 claim must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make

7

such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under Section 1983. *Id.* at 487. This limitation, known as the *Heck* bar, applies whenever "state prisoners seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).

When a state prisoner seeks damages in a Section 1983 suit, the district court must therefore consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Heck*, 512 U.S. at 487. Any Section 1983 suit which would necessarily demonstrate the invalidity of the confinement or its duration is barred no matter the relief sought or the target of the suit. *Wilkinson*, 544 U.S. at 81-82. Here, because plaintiff's success in the instant suit would necessarily demonstrate the invalidity of the duration of his confinement, the *Heck* bar applies. *See id.*; *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (holding that the *Heck* rule applied to a state prisoner who was seeking damages for unconstitutional deprivation of good-time credits, so long as the alleged constitutional violation would, if established, imply the invalidity of the deprivation of good-time credits). Plaintiff has not alleged or otherwise demonstrated that the duration of his sentence has already been invalidated via reversal on direct appeal, expungement by executive order, declaration of invalidity by a state tribunal authorized to make such determination, or issuance of a writ of habeas corpus. *See, generally* FAC; *see also Heck*, 512 U.S. at 486-487.

Plaintiff argues that his claims arising from defendants' alleged failures with respect to his inactive/active gang status review are not barred by *Heck* because he is no longer incarcerated and therefore cannot file a writ for habeas corpus challenging the duration of his incarceration.[5] (*See*

---

[5] Plaintiff concedes that "[n]one of [his] prior habeas or civil actions claimed the harm that arose from the lack of meaningful review of his requests to correct his record—a violation that is a

8

Dkt. No. 42 ("Opp.") at 16.) In so arguing, plaintiff points to *Nonnette v. Small* for the proposition that because "[p]laintiff is not in custody and cannot obtain relief by means of a petition for a writ of habeas corpus because it would be dismissed as moot[,] . . . *Heck* does not bar plaintiff's claims." (*Id.* (citing *Nonnette*, 316 F.3d 872, 875-77 (9th Cir. 2002).)

In *Nonnette*, the Ninth Circuit held that where a prisoner acts diligently but is nevertheless precluded from challenging his or her imprisonment in habeas due to the short length of the sentence, *Heck*'s bar does not apply to his Section 1983 lawsuit for constitutional violations related his loss of good-time credits. 316, F.3d at 875, 878 n.7 (noting that the procedural posture in *Nonnette* differed critically from that in *Heck* because *Nonnette* was released from prison after the district court entered its decision). However, the Ninth Circuit subsequently clarified that its holding in *Nonnette* "was founded on the unfairness of barring a plaintiff's potentially legitimate constitutional claims when the individual *immediately* pursued relief after the incident giving rise to those claims and could not seek habeas relief only because of the shortness of his prison sentence." *See, by contrast, Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir. 2006) (holding that the *Heck* bar applied to former prisoner's Section 1983 claims where plaintiff did not file suit until approximately three years after the incident forming the basis of his claim) (emphasis supplied). Here, plaintiff was released from prison in August 2016 (FAC ¶ 189) but did not file his initial complaint until over a year later on December 3, 2017 (*see* Dkt. No. 1). The Court finds that plaintiff's Section 1983 complaint does not fit into the narrow exception created by *Nonnette* and is therefore barred by *Heck*.

Accordingly, the defendant's motion to dismiss is **GRANTED IN PART** as to plaintiff's Eighth and Fourteenth Amendment claims related to his over-detention, with leave to amend. The briefing does not suggest that plaintiff can allege facts which will overcome the legal bars noted. However, out of an abundance of caution, plaintiff may file an SAC to the extent that he can show that the duration of his sentence has already been invalidated or that despite the one-year delay in filing his initial complaint in the instant action, he diligently sought relief for his claim that

---

separate and distinct injury form the injuries claimed in prior actions." (Opp. at 15.)

9

defendants failed to timely conduct his inactive/active gang status review. Counsel is reminded of his Rule 11 obligations.

        iii.      Deprivation of Due Process

Plaintiff next alleges defendants' erroneous validation of plaintiff as a gang affiliate and failure to conduct his inactive/active gang status review in a timely manner deprived plaintiff of his due process rights under the Sixth and Fourteenth Amendments. (FAC ¶¶ 206, 215). As a preliminary matter, the right to a fair trial under the Sixth Amendment applies only to criminal prosecutions. *White v. Ockey*, 241 Fed. Appx. 462, 466-67 (10th Cir. 2007). Plaintiff has not alleged that he was criminally prosecuted as a result of defendants' alleged conduct. Accordingly, the Court **GRANTS IN PART** defendants' motion to dismiss as to plaintiff's claims of deprivation of due process in violation of the Sixth Amendment.

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic, without due process of law. *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995). The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness (denial of procedural due process guarantees) or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective (denial of substantive due process guarantees). *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

Interests that are procedurally protected by the Due Process Clause may arise from two sources – the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, regardless of whether they are authorized by state law.

Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison

10

officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *See Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487.

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Thus, although prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply, where serious rules violations are alleged and the sanctions to be applied implicate state statutes or regulations that narrowly restrict the power of prison officials to impose the sanctions and the sanctions are severe, the Due Process Clause requires certain minimum procedural protections. *See id.* at 556-57, 571-72 n.19. The placement of a California prisoner in isolation or segregation, or the assessment of good-time credits against him, as a result of disciplinary proceedings, for example, is subject to *Wolff's* procedural protections if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87.[2]

California's regulations concerning discipline provide explicit standards that fetter official discretion. Under California Code of Regulations Title 15, Section 3320(l), officials must find that a preponderance of the evidence substantiates the charge before guilt may be found and punishment assessed following an RVR. Absent such a finding the inmate may not be placed in isolation nor segregation, nor assessed good-time credits. *See* Cal. Code Regs. Title 15, § 3320(a) (requiring notice); *id.* § 3320(b) (requiring hearing). Because a prisoner may not be disciplined unless explicit substantive and procedural requirements are met, the disciplinary standards and procedures meet the "narrowly restrict" prong of the *Sandin* test.[6]

---

[6] Accordingly, the Court is not persuaded by defendants' argument that the only "process constitutionally due" in this instance is that required by a typical administrative placement, which requires only opportunity to be heard and "some evidence." (*See* Motion at 17-18.)

11

Here, plaintiff has alleged that he was placed in isolation and lost good-time credits as a result of defendants' initial validation of plaintiff as a gang affiliate and subsequent failure to review his gang status, both of which lacked proper evidentiary support. He further alleges that he was detained in SHU for nearly six years, from July 22, 2010 until March 2016, and over-detained in prison for at least 16 months. (*Id.* ¶¶ 37, 90, 188.) Accordingly, the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 484, 487. For these reasons, plaintiff has sufficiently pled facts to suggest that defendants deprived him of procedural due process. Accordingly, the Court **DENIES IN PART** defendants' motion to dismiss as to plaintiff's claims related to procedural due process.[7]

### B. Ex Post Facto Claim

Because "Section 2933.6 does not punish 'the criminal conduct for which [plaintiff] was imprisoned,' but instead 'punishes for conduct that occurred after the commission of, or the conviction for, the punishable offense,'" the amendment of Section 2933.6 does not violate plaintiff's rights under the Ex Post Facto Clause. *Nevarez v. Barnes*, 749 F.3d 1124, 1128-29 (9th Cir. 2014) (holding that a state court's determination that denial of good-time credits under the amendment to Section 2933.6 did not violate the rights under the Ex Post Facto Clause of a petitioner-inmate, a validated gang-associate sentenced to a SHU term, who challenged said denial). Accordingly, the Court **GRANTS IN PART** defendants' motion to dismiss as to plaintiff's Ex Post Facto claim.

### IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendants' motion to dismiss plaintiff's claims of unlawful conditions of confinement stemming from his allegedly improper gang validation is **DENIED**.

2. Defendants' motion to dismiss plaintiff's claims of over-detention stemming from

---

[7] It is not clear from plaintiff's papers whether he alleges violations of substantive due process under the Fourteenth Amendment. The FAC does not appear to so allege, but plaintiff's opposition avers that "[t]o the extent that it is found hat the constitutional guarantees traditionally associated with criminal prosecutions have not been complied with, the defendants' acts are not analyzed under an Eighth Amendment Standard." (Opp. at 22.) To the extent that plaintiff files an SAC, he should provide clarification.

his allegedly improper gang validation is **GRANTED**. Plaintiff's over-detention claims are dismissed with leave to amend.

3. Defendants' motion to dismiss plaintiff's claims of deprivation of due process related to his allegedly improper gang validation and in violation of the Sixth Amendment is **GRANTED**.

4. Defendants' motion to dismiss plaintiff's claims of deprivation of due process related to his allegedly improper gang validation and in violation of the Fourteenth Amendment is **DENIED**.

5. Defendants' motion to dismiss plaintiff's ex post facto claim is **GRANTED**.

Within seven (7) days, plaintiff shall file a notice as to whether he intends to file an SAC. If so, plaintiff shall file an SAC within twenty-one (21) days of this order. Defendants shall file a response within fourteen (14) days of plaintiff's filing an SAC. If not, plaintiff's FAC will proceed accordingly and defendants shall file an answer within fourteen (14) days of plaintiff's filing of the notice.

This Order terminates Docket Number 24.

**IT IS SO ORDERED.**

Dated: November 27, 2018

*/s/ Yvonne Gonzalez Rogers*
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**