**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LOUIS J. AGUIRRE**, | Case No.  4:17-cv-06898-YGR |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **CLARK E. DUCART, ET AL.**, | Re: Dkt. No. 111 |
| Defendants. | |

Plaintiff Louis J. Aguirre brings this action against defendants Warden Clarke E. Ducart, and Lieutenants S. Burris and J. Frisk.[1]  Aguirre alleges claims for deprivation of constitutional rights in violation of 42 U.S.C. Section 1983, including for violations of the Fourteenth Amendment procedural due process clause and the Eighth Amendment conditions of confinement.

Now before the Court is defendants' motion for summary judgment. Having carefully reviewed the pleadings, the papers submitted on each motion, the parties' oral arguments at the hearing held on January 12, 2021, and for the reasons set forth more fully below, the Court **GRANTS** defendants' motion for summary judgment.

**I.      BACKGROUND[2]**

In general, the relevant facts of this matter are not in dispute unless otherwise noted.[3] Thus:

---

[1]  Following the completion of the briefing on the motion for summary judgment, the parties filed a stipulation for voluntary dismissal dismissing with prejudice then defendants D. Wilcox and D. Wells.  (*See* Dkt. Nos. 123, 124.)

[2]  Citations to the record are omitted to expedite the issuance of this Order.

[3]  The parties have each filed evidentiary challenges.  First, plaintiff moves to strike paragraph 19 of the Frisk declaration under the sham affidavit rule, as it purportedly contradicts his deposition testimony.  Having reviewed the deposition testimony and the declaration, the request is **DENIED**.

Second, defendants request that the Court disregard evidence from Aguirre because he failed to properly authenticate the deposition transcripts of Burris, Frisk and Ducart.  Specifically, defendants highlight that none of the copies are signed or certified from the court reporter. Because the consideration of these transcripts have no bearing on the analysis in this Order, the

On June 3, 2009, pursuant to a plea agreement with the District Attorney for the County of Ventura, Aguirre was convicted of violating Health and Safety Code §§ 11378 and 11370.1(g) and Penal Code § 12021(a)(1).  On July 31, 2009, Aguirre was sentenced by the Superior Court of the State of California, County of Ventura, pursuant to the plea agreement, to a determinate term of imprisonment of 9 years under the law.  In total, Aguirre was a former inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") from 2009 until 2016.

Prison investigators from Wasco State Prison determined in 2009 that Aguirre was affiliated with the Mexican Mafia after their investigation revealed that Aguirre exchanged letters in 2008 to 2009 in coded language with known gang members in CDCR's custody about gang politics and hierarchy.  Under then-existing regulations, Aguirre received a six-year term of segregated confinement in CDCR's Security Housing Unit ("SHU").

In September 2012, a correctional officer at California State Prison Corcoran witnessed Aguirre participate in a demonstration of support for the Mexican Mafia by withholding of dining trays, thereby delaying food for other inmates.  After a hearing in which Aguirre was allowed to present evidence, prison officials convicted Aguirre of the disciplinary offense of promotion of gang activity.[4]

Aguirre then mounted two challenges to this disciplinary conviction in habeas petitions he filed in both state and federal court.  Aguirre first filed a petition in the Superior Court for the County of Kings and alleged that his conviction violated due process because it lacked evidentiary support. The Superior Court ultimately denied Aguirre's habeas petition.  Relying on *Superintendent v. Hill*, 472 U.S. 445 (1984), the Superior Court concluded that "the guilty verdict

_____

request is **DENIED AS MOOT**.  Although, at oral argument, the defense provided no indication that the depositions where not, in fact, authentic and plaintiff represented that he could now authenticate them, but they were filed prior to the time for review had expired.

[4]  Aguirre disputes the veracity of the evidence that was used to find that he was involved in gang activity.  Specifically, with respect to the 2008 to 2009 correspondence (the identified four sources of correspondence), he disputes that he was writing in any coded language, and disputes he used a purported gang symbol as he contends that the symbol he drew was a paw print, and not the Mayan symbol for the number 13.  With respect to the 2012 incident, Aguirre asserts in a declaration that he did not withhold any food trays, but that the tray was never collected from him.

United States District Court
Northern District of California

1    is supported by the testimony of Correctional Officer Galvan.  He testified at the hearing that all

2    the inmates listed (which included petitioner) withheld their food trays."  (Dkt. No. 111-11 at 40;

3    *see also id.* at 41 (Court of Appeal denying petition for writ of habeas corpus), 42 (California

4    Supreme Court denying petition for writ of habeas corpus).)

5          Aguirre thereafter brought the same challenge in federal court.  *See Louis Juarez Aguirre v.*

6    *Connie Gipson*, 1:13-cv-1393-LJO-JLT (E.D. Cal. Oct. 30, 2015).  Relying on the same standard

7    outlined in *Hill*, 472 U.S. at 454, the United States District Court for the Eastern District of

8    California denied Aguirre's federal habeas petition and also concluded that Aguirre's disciplinary

9    conviction for promotion of gang activity met the "some evidence" standard.  (Dkt. No. 111-11 at

10   49-53 (magistrate judge report); *see also id.* at 111-11 at 55-57 (order adopting report).)  In sum,

11   both courts concluded that Aguirre received all the process he was due and specifically found that

12   the disciplinary conviction was supported by some evidence.

13         Aguirre transferred to Pelican Bay State Prison in 2014, and defendants Burris and Frisk

14   conducted the six-year review of his involvement with the Mexican Mafia in April 2015.  Under

15   then-existing policies, Aguirre would only be removed from the SHU if there was no evidence that

16   he engaged in gang behavior in the four years preceding his review.  Burris reviewed Aguirre's

17   2012 disciplinary conviction for promotion of gang activity and provided Aguirre with notice that

18   he intended to use that conviction as evidence of Aguirre's continued activity with the Mexican

19   Mafia.  Burris also afforded Aguirre the opportunity to provide a written rebuttal.  After collecting

20   Aguirre's rebuttal, Burris relied on Aguirre's disciplinary conviction and determined that he was

21   still an active associate of the Mexican Mafia.  In total, Aguirre was provided with notice, an

22   opportunity to be heard, and a decision based on evidence.

23         Based on the above evidence that Aguirre remained an active associate of the Mexican

24   Mafia, Warden Ducart, in his role as the chair of Pelican Bay's Institutional Classification

25   Committee ("ICC"), retained Aguirre in the SHU in July 2015. Aguirre was thereafter released

26   from the SHU in March 2016, and was subsequently transferred to Folsom State Prison.

27

28

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A moving party defendant bears the burden of specifying the basis for the motion and the elements of the causes of action upon which the plaintiff will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the plaintiff to establish the existence of a material fact that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the summary judgment context, the court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If the plaintiff "produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by" defendants. *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017). "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge." *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014) (alteration in original) (quotation omitted). Thus "where evidence is genuinely disputed on a particular issue— such as by conflicting testimony—that issue is inappropriate for resolution on summary judgment." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (internal quotation marks omitted).

III.    ANALYSIS

The Court first addresses the Eighth Amendment Claim, then defendants' arguments that plaintiff's theories are based on dismissed claims or outside the scope of the complaint, whether Aguirre's claims are barred by the doctrine of collateral estoppel and finally the merits of Aguirre's due process claim.

A.    **Eighth Amendment Claim**

Aguirre has filed a notice which indicates that he does not oppose summary judgment with respect to his Eighth Amendment conditions of confinement claim.  (Dkt. No. 117.)  Accordingly, the Court **GRANTS** summary judgment on the Eighth Amendment claim.

B.    **Arguments Based on Dismissed Claims or Outside the Scope of the Complaint**

Defendants first contend that Aguirre has improperly raised claims that have otherwise been dismissed by the Court in earlier orders, namely an over-detention claim.  "Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir.1997) (internal quotation marks omitted).  The Court agrees.

Here, defendants previously moved to dismiss the over-detention claim as a violation of the favorable termination rule under *Heck v. Humphrey*, 512 U.S. 477 (1994) because the claim challenged the lawfulness of his confinement.  The Court had agreed with defendants, and gave Aguirre the opportunity to amend this part of his due process claim.[5]  Aguirre did not plead additional facts to cure this deficiency, and the Court dismissed this claim with prejudice. (Dkt. No. 64 at 6-8.)

Accordingly, to the extent that Aguirre is indeed resurrecting an over-detention claim, the Court agrees that this claim has been dismissed by the Court, including, specifically, where Aguirre mentions that he was delayed a review and delayed good time credits, and where those

---

[5]  "[T]o the extent that he can show the duration of his sentence has already been invalidated or that despite the one-year delay in filing his initial complaint in the instant action, he diligently sought relief for his claim that defendants failed to timely conduct his inactive/active gang status review."  (Dkt. No. 47 at 9-10.)

United States District Court
Northern District of California

delays impact his detention length.

Defendants also challenge two of Aguirre's arguments made in the opposition as being outside of the operative Second Amended Complaint: (1) that Aguirre was denied "meaningful periodic review" and (2) that the delay in the six-year review delayed the *Ashker* review.  *See Ashker v. Newsom*, 4:09-cv-05796-CW (N.D. Cal.).

In general, new factual allegations and claims should not be raised for the first time in an opposition to summary judgment.  *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006).  This rule reinforces Federal Rule of Civil Procedure 8(a)(2)'s requirement that the complaint "give the defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests."  *Id.* at 968.

First, with respect to the "meaningful periodic review," the Court agrees that Aguirre has not properly pled such a claim.  The complaint is primarily premised on violations of his due process claim on the lack of evidence to support Aguirre's revalidation as a gang associate.  (Dkt. No. 51, ¶¶ 122-124; 218-220.)  The Court recognizes that there are also more general allegations that discuss defects with the process generally. (*Id.*, ¶ 220 ("Defendants, acting under the color of state law, developed, adopted, prescribed, enforced or implemented policies and procedures, choosing to approve and ratify Plaintiff's re-validation in disregard of Plaintiff's rights knowing the consequences of Plaintiff's revalidation would be continued placement in SHU and loss of good time / work credits in violation of Plaintiff's substantive due process rights under the Fourteenth Amendment.").)  However, none of these paragraphs and nowhere in the complaint does Aguirre otherwise specifically raise the lack of "meaningful *periodic* review" (emphasis supplied).  Thus, under *Pickern*, the Court disregards Aguirre's arguments as to a lack of "meaningful periodic review" as it is impermissibly raised and outside the scope of the operative complaint.

Second, with respect to any injury with respect to a delay in the *Ashker* review, Aguirre has simply not pled or tied any injury or claim to *Ashker*.  Aguirre does mention *Ashker* a few times in the complaint.  (*See id.*, ¶¶ 77, 78, 184, 185, 197.)  However, nowhere does Aguirre claim that the delay in reviewing his active and inactive status delayed any *Ashker* review, and no claim

6

appears to be based on *Ashker*.  Thus, the Court finds that this too is outside the scope of the operative complaint.

### C.      Collateral Estoppel

Defendants preliminarily assert that Aguirre's due process claims are barred by the doctrine of collateral estoppel.

Standard.  In general, the federal Full Faith and Credit Statute, 28 U.S.C. § 1738, requires that a federal court "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  The Ninth Circuit has given state habeas proceedings preclusive effects in subsequent section 1983 actions where the habeas court "afforded a full and fair opportunity for the issue to be heard and determined under federal standards."  *Silverton v Department of the Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981).  Under California law, collateral estoppel, or issue preclusion, "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action."  *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015).  Under California law, collateral estoppel is established when, (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity.  *Id.* at 825.  The federal standard requires that the same elements be established. *See Hydranautics v. FilmTec Corp.*, 204 F.3d 808, 885 (9th Cir. 2000).

1. Final Adjudication.  Here, there were two litigations in state and federal courts that were undisputedly concluded with a final adjudication. Thus, this element is satisfied.

2. Identical Issues and 3. Litigated and Decided in the First Action.  In this action, Aguirre alleges that Frisk and Burris violated the "some evidence" standard set forth in *Hill*, 472 U.S. 455, when they used the 2012 disciplinary violation to find that Aguirre was an active Mexican Mafia affiliate in their 2015 revalidation determination.  (*See* Dkt. No. 51, ¶¶ 123-123.1.)  Two previous courts have found that the same disciplinary violations (including both the correspondence in 2008 to 2009 and the 2012 dining tray incident) met the "some evidence" standard.

First, in denying Aguirre's state-court habeas petition, the Superior Court of Kings County,

United States District Court
Northern District of California

1  California, citing *Hill*, concluded "the guilty verdict is supported by the testimony of Officer

2  Galvan. He testified at the hearing that all inmates listed (which included petitioner) withheld their

3  food trays." (Dkt. No. 111-11 at 40.)

4       Second, Aguirre thereafter brought this same challenge in federal court.  (*Id.* at 44.)  Again,

5  relying on the same due process standards of advanced notice, an opportunity to be heard, and a

6  decision supported by some evidence, the district court concluded that "some evidence was

7  presented supporting the contention that [Aguirre] participated in activities that promoted the

8  Mexican Mafia and Southern Hispanics prison gangs."  (*Id.* at 51; *see also id.* at 55-57.)

9       Thus, these issues are identical and were both litigated and decided in both prior actions.

10      4. Identical Parties or Those in Privity  "A person technically not a party to the prior action

11  may be bound by the prior decision if that person's interests are so similar to a party's that the

12  party was the person's virtual representative in the prior action."  *Morris v. Lewis*, No. C-10-5640-

13  CRB-PR, 2012 WL 1549535, at *2 (N.D. Cal. Apr. 30, 2012) (citing *Trevino v. Gates*, 99 F.3d

14  911, 923 (9th Cir. 1996)).

15      In Aguirre's habeas petition, he named the then-warden of Corcoran (the jail in which he

16  was located in), and here, he names the two investigators responsible for investigating his prior

17  gang activity and revalidating the 2015 SHU status.  These parties stand in privity with one

18  another because, as in *Morris*, these parties have a "common interest and obligation" in

19  "appropriate housing of dangerous inmates."  *Id.*  Thus, the privity requirement is satisfied here.[6]

20      Accordingly, because the elements above are satisfied, the Court finds that Aguirre's due

21  process claims are barred by the doctrine of collateral estoppel.  Thus, the Court **GRANTS**

22

23       [6] Aguirre's only response to the doctrine of collateral estoppel, other than to argue its
24  irrelevance, is to invoke the void for vagueness doctrine.  *See United States v. Davis*, 139 S.Ct.
    2319 (2019).  Specifically, Aguirre argues that the Security Threat Group ("STG") Disciplinary
25  Matrix was unused by Frisk and Burris, and that they instead relied upon a statute, 15 CCR §
    3023(a) (2012), which Aguirre contends is vague and therefore void.  Aguirre does not persuade,
26  where he does not connect the relevance of the void for vagueness doctrine to the doctrine of
    collateral estoppel.  Further, Aguirre does not grapple with the above elements, or dispute that the
27  same "some evidence" standard applies.  The record is also clear that, even using the STG
    Disciplinary Matrix, its requirement of severe impact was satisfied where operations at the prison
28  were delayed by approximately two hours due to the 2012 incident.

United States District Court
Northern District of California

1  summary judgment on the due process claim in favor of defendants on this ground.

2      **D.    Merits of the Due Process Claim**

3          Defendants alternatively move for summary judgment on the Fourteenth Amendment

4  claim on the basis that (1) Aguirre was provided the appropriate due process and (2) that standard

5  for detaining him in SHU (*i.e.* the "some evidence" standard) were satisfied.

6          **1.    Standard**

7          As an initial matter, Aguirre in his opposition contends that there is heightened due process

8  protections where he was prevented from earning good time credit as a result of being placed

9  within SHU.  Specifically, Aguirre points out that it is undisputed that his retention in the SHU

10 prevented his eligibility for good-time credit.  Aguirre avers that this constituted an imposition of

11 "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,"

12 *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and that his retention in SHU was not merely

13 administrative, but was disciplinary in nature, requiring the heightened procedures set forth in

14 *Wolff v. McDonnell*, 418 U.S. 539, 558-59 (1974).

15         Aguirre does not persuade.  *Wolff*'s heightened due process requirements only apply when

16 the state revokes credits already earned as a result of a conviction for serious misconduct.  *Wolff*,

17 418 U.S. at 558-59.  In other words, *Wolff* equated the loss of one's earned good-time credit to a

18 deprivation of one's property, the revocation of a license, or the taking of government-created

19 jobs, absent cause for termination.  *Id*. at 557-58.  The common thread of *Wolff* among these

20 illustrative examples demonstrates that formal adversarial procedures adhere to the taking of

21 something that has already been earned.  *Id*.

22         This is so because "[t]here is a crucial distinction between being deprived of a liberty one

23 has, and being denied a conditional liberty that one desires." *Greenholtz v. Inmates of Nebraska*

24 *Penal & Corr. Complex*, 442 U.S. 1, 9 (1979).  In *Greenholtz*, an inmate's expectation of parole

25 did not require formal, adversarial procedures; rather, notice and an opportunity to be heard

26 satisfied due process.  *Id*. at 16-17.

27         In sum, Aguirre conflates the loss of credits earned with the potential to earn future credits.

28 Courts both inside and outside the Ninth Circuit that have analyzed similar claims under *Wolff*

9

1    have concluded that the inmate's expectation of earning future good time credits does not

2    implicate a protected liberty interest sufficient to require formal adversarial proceedings.  *See*

3    *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (holding that validated member of the Aryan

4    Brotherhood confined to disciplinary segregation had no liberty interest in ability to earn future

5    good-time credits); *Abed v. Armstrong*, 209 F.3d 63, 65-66 (2nd Cir. 2000) (where state prison

6    directive prohibited validated gang members from earning good time credits, inmate found to be a

7    gang member and classified as "Security Risk Group Safety Threat Member" had no liberty

8    interest in expectation of earning future credits); *Ashby v. Lehman*, 307 F. App'x. 48, 49 (9th Cir.

9    Jan 6, 2009) ("Ashby lacks a constitutionally protected liberty interest in earning early release

10   time credits, and he was therefore not entitled to the protections of due process."); *Cochran v.*

11   *Diaz*, No. 1:13-CV-00551 AWI, 2013 WL 3991991, at *2 (E.D. Cal. Aug. 2, 2013) (applying

12   *Luken* and concluding that an inmate has no liberty interest in the opportunity to earn future good

13   time credits); *Hill v. Swarthout*, No. 2:15-CV-2012 AC P, 2017 WL 431359, at *3 (E.D. Cal. Jan.

14   31, 2017) (citing *Ashby*, *Luken*, and *Abed*, and dismissing inmate's due process challenge to his

15   confinement in SHU because there was no liberty interest in the opportunity to earn good-time

16   credits); *Aung v. Beard*, No. SACV 14-909-AJW, 2014 WL 7185336, at *2 (C.D. Cal. Dec. 15,

17   2014) ("No Supreme Court authority has extended *Wolff*'s due process protections to a prisoner's

18   interest in unearned, potential future credits or in accruing credits at a specific rate.").

19            Thus, the correct standard in this situation relies upon the Ninth Circuit's long-established

20   precedent: that assignment of gang members to the Security Housing Unit only requires "some

21   notice of the charges against him" and an opportunity to be heard.  *Bruce v. Ylst*, 351 F.3d 1283,

22   1287 (9th Cir. 2003).  This is because "California's policy of assigning suspected gang affiliates to

23   the Security Housing Unit is a not a disciplinary measure, but an administrative strategy designed

24   to preserve order in the prison and protect the safety of all inmates." *See Munoz v. Rowland*, 104

25   F.3d 1096, 1098 (9th Cir. 1997).[7]

26

27            [7]  Aguirre contends that the 2010 revisions to the penal code, section 2933.6, has some
     impact on the correct due process standard to use.  But Aguirre does not elaborate why these
28   revisions would lead to any impact on the analysis, where no Court has ever found an interest in

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    Analysis

Under this standard articulated above, the Court concludes that Aguirre properly received notice and opportunity to be heard, and applied the correct "some evidence" standard in reaching its final determination. *See*, *e.g.*, *Castro v. Terhune*, 712 F.3d 1304, 1314 n.4 (9th Cir. 2013) (due process also requires a decision based on some evidence). "'Some evidence' review requires [the Court] to ask only 'whether there is *any evidence* in the record that could support the conclusion.'" *Id.* (emphasis in original) (citing *Bruce*, 351 F.3d at 1287). Courts applying this standard "do not examine the entire record, independently assess witness credibility, or reweigh the evidence.'" *Id*. (citing *Bruce*, 351 F.3d at 1287.) "Evidence only must bear 'some indicia of reliability' to be considered 'some evidence.'" *Id*. (citing *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990)). "Moreover, evidence may qualify as 'some evidence,' even if it does not 'logically

---

the future expectation of unearned good behavior credits.

The 2009 version of section 2933.6(a), in effect when Aguirre was sentenced, states:

> Notwithstanding any other law, a person who is placed in a Security Housing Unit or an Administrative Segregation Unit for misconduct described in subdivision (b) is ineligible to earn work credits or good behavior credits during the time he or she is in the Security Housing Unit or the Administrative Segregation Unit for that misconduct.

Section 2933.6(a) was revised, effective January 25, 2010 to read:

> Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) or upon validation as a prison gang member or associate is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct.

Aguirre argues that the weight of prior Ninth Circuit authority is inapplicable after the 2010 revisions, and that there is heightened due process afforded to him under these revisions and the STG Disciplinary Matrix. Again, Aguirre provides no authority for his positions on these grounds. The Court is otherwise bound to Ninth Circuit rulings; to the extent Aguirre takes issue with the reasoning in these cases, it is a matter more appropriately taken before the circuit.

preclude [] any conclusion but the one reached.'" *Id.* (citing *Hill*, 472 U.S. at 457).

Here, record evidence supports summary judgment on the Fourteenth Amendment Due Process Claim:

- It is undisputed that Aguirre was provided notice and an opportunity to be heard.
- Aguirre agrees that he began earning good time credit once released from SHU.
- Although now disputing his prior involvement, Aguirre does not dispute the actual record that was developed during the prior incidents.
- Aguirre does not dispute that the 2012 incident delayed prison operations for two hours.
- As both the state and federal courts deciding Aguirre's habeas petitions concluded, Aguirre's rules-violation met this minimally stringent standard because an officer testified that Aguirre withheld his meal tray. Both of these courts found that there was some evidence in support of the decision to hold Aguirre in SHU.

Thus, the Court concludes that the undisputed record shows that Aguirre received notice and opportunity to be heard, and that there was some evidence in support of the prison official's decisions. Accordingly, the Court alternatively **GRANTS** summary judgment on the due process claim in favor of defendants on this ground.[8]

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment. The Clerk of the Court is directed to enter judgment in favor of defendants and close this case.

This Order terminates Docket Number 111.

**IT IS SO ORDERED.**

Dated: January 21, 2021

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[8] The Court need not reach the issue of qualified immunity where it finds no constitutional violation under the first prong of the qualified immunity analysis. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (negative answer to either inquiry ends the analysis).